Charles E. **BROWN** and Edith Brown, his wife, Plaintiffs,

v.

**FIRST INSURANCE COMPANY OF HAWAII, Limited, Defendant.**

Civ. No. 67–211.

United States District Court
D. Oregon.

Dec. 18, 1968.

14. Davenport v. Prentice, 126 App.Div. 451, 110 N.Y.S. 1056 (1908).

15. Tr., p. 236.

Charles Paulson, Lent, York & Paulson, Portland, Or., and David E. Williams, Rembert Ryals, Critchlow, Williams & Ryals, Richland, Wash., for plaintiffs.

Manley B. Strayer, Cleveland C. Cory, Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for defendant.

## OPINION

SOLOMON, District Judge:

Plaintiffs filed this action to recover on a products liability insurance policy issued by defendant. The issue involves the effect of a branch manager's representations that the policy would cover all injuries resulting from sales of defective merchandise, when the policy limited coverage to accidents occurring while the policy was in effect.

In 1955, plaintiff Edith L. Brown and Mrs. Merle Chase formed a partnership to operate a gift shop.[1] Vernon L. Parker, one of defendant's branch managers, sold the partnership a "storekeepers' liability policy" which contained a provision that limited coverage to accidents occurring while it was in effect. The policy period was September 21, 1955, to September 21, 1956. Parker, believing in good faith that the "accident" was the sale of a defective product rather than the physical injury, told the partners that the policy would cover any sales made out of the shop. The policy also provided that no action by any person could estop the issuer from asserting any policy provision,[2] and it contained an integration clause.[3] On September 21, 1956, the partnership renewed the policy for one year.

On November 30, 1956, Mrs. Chase sold her partnership interest to Jennie Fink. On August 16, 1957, Mrs. Brown sold her partnership interest.

In March, 1956, while the policy was in effect, Mrs. Brown and Mrs. Chase, while partners, sold a grass hula skirt to Mrs. Frances Leppard. On November 2, 1957, after the policy had expired, the skirt ignited and exploded while being worn by Carol Lee Chapman. Upon learning of the accident, Mrs. Brown immediately notified defendant. Defendant's reply letter is set out in the margin.[4]

---

1. Mrs. Chase assigned her claim to plaintiffs for prosecution. Charles E. Brown, husband of Edith L. Brown, is a party because he and his wife live in Washington, a community property state.

2. "11. Changes Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of the policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the president, a vice president, or a secretary of the company and countersigned by a duly authorized representative."

3. "14. By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, and that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

4. "January 22, 1959
"Dear Mrs. Brown:
"We acknowledge your letter of January 12, addressed to Mr. Parker.
"You are at liberty to inform Attorney John A. Roberts that you did have Liability Insurance Coverage in 1955, 1956, and 1957. If he cares to correspond with us with respect to this possible claim, we will consider the merits of it.
"From a practical standpoint, judging by the information contained in your letter,

In July, 1959, Miss Chapman filed an action against the partnership in the United States District Court for Hawaii. Some time that summer the partners learned for the first time that defendant (the insurance company) denied coverage. They therefore hired their own lawyer. Miss Chapman was awarded a judgment in her action on May 2, 1961, and it was affirmed in April, 1962. Brown v. Chapman, 304 F.2d 149, 4 A.L.R.2d 490 (9th Cir. 1962).

Thereafter, Miss Chapman filed an action to recover on the policy directly from the insurance company. In that action she made three contentions which are relevant to this proceeding. First, she asserted that the company was estopped to deny coverage under the policy because after the accident it had breached a promise to defend the action on behalf of Mrs. Brown and Mrs. Chase. Second, she asserted that the company was estopped to deny coverage because of the representations which Parker made at the time the policy was issued. Third, she asserted that the term "accident" was ambiguous. The United States District Court in Hawaii found for Miss Chapman on the basis of the first assertion, but rejected the other two. The Court of Appeals reversed the District Court finding and judgment in favor of Miss Chapman. First Insurance Company of Hawaii v. Chapman, 355 F.2d 49 (9th Cir. 1965). The Appeals Court held that if Miss Chapman was a proper plaintiff, estoppel based on the company's conduct after the accident would at most give rise to a cause of action for breach of the promise to defend. This conduct could not support estoppel to deny coverage under the policy. Miss Chapman apparently did not raise her second assertion before the Court of Appeals; the portion of that Court's opinion dealing with estoppel is concerned only with the company's conduct after the accident. The Court of Appeals, in a per curiam opinion, affirmed the District Court's rejection of the third assertion.

Miss Chapman satisfied her judgment against the partners, and plaintiffs now bring this action to recover the amount of the judgment, plus interest, damages for emotional distress allegedly suffered as a result of defendant's dealings, and for attorney's fees.

Defendant first contends that plaintiffs are collaterally estopped to bring this action by the decision in First Insurance Company of Hawaii v. Chapman, supra. However, I have concluded that neither the judgment of the District Court, nor the action of the Court of Appeals, bars this action. The Court of Appeals opinion dealing with estoppel held that the insurance company's conduct *after* the accident did not estop it to deny coverage under the policy. Here the Court need only decide whether the duration of coverage provision was ambiguous and should be interpreted according to the company agent's good faith representation *at the time the policy was issued* that the company would protect the assureds against liability arising from any products sold during the policy period.

The District Court rejected Miss Chapman's assertion that Parker's representations at the time the policy was issued estopped the company from denying coverage under the policy. The Court of Appeals per curiam opinion rejected her assertion that the term "accident" was ambiguous. However, these holdings bind the plaintiffs in this action only if they are in privity with Miss Chapman. The Oregon definition of privity includes those who control an

we can see no liability on the part of your shop, even if it could be definitely established that the skirt was purchased from you. We suggest, therefore, that you not concern yourself further with this matter, other than to inform Mr. Roberts to correspond with us if he chooses, as we will make whatever investigation and/or negotiation appears necessary, to the extent of your policy coverage.

Yours very truly,
F. W. CLAY
CLAIMS DEPARTMENT"

action although not parties to it, those whose interests are represented by a party to the action, and the successors in interest to those having derivative claims. Wolff v. DuPuis, 233 Or. 317, 378 P.2d 707 (1963). For privity to exist, both parties must have the same incentive to prevail on the common issue. Miss Chapman's ultimate satisfaction of her judgment out of the personal assets of Mrs. Brown and Mrs. Chase indicates that her interest in the suit against the insurer was merely one of convenience. Mrs. Brown and Mrs. Chase were interested in requiring the insurance company to pay the $125,000 judgment against them. I do not consider Miss Chapman's interest in convenience strong enough to guarantee protection of Mrs. Brown's and Mrs. Chase's interests in warding off potential financial disaster.

■ There is some evidence that Mrs. Brown and Mrs. Chase participated in the litigation in the former action. However, the burden is on defendant to prove not only participation but also control. Standard Accident Ins. Co. v. Doiron, 170 F.2d 206 (1st Cir. 1948). It is not enough that Mrs. Brown and Mrs. Chase might have assisted or cooperated in the prosecution of that action by providing an attorney or by procuring witnesses or evidence. Cofax Corp. v. Minnesota Mining & Mfg. Co., 79 F.Supp. 842 (S.D.N.Y.1947). Actual control of the litigation is necessary. Rumford Chemical Works v. Hygienic Chemical Co., 215 U.S. 156, 30 S.Ct. 45, 54 L.Ed. 137 (1909).

I find that defendant failed to make this showing. Therefore, neither the judgment of the District Court nor the action of the Court of Appeals bars this action.

■ Plaintiffs assert that defendant should be estopped to rely on the policy limitation, or that the limitation should be interpreted according to Parker's understanding of it when he told them that they would be covered for this type of accident.[5] Defendant claims that estoppel cannot operate against an insurance company to expand coverage. Most of the cases upon which defendant relies involve policy provisions which are clear and unambiguous. For example, in Boardman v. Fireman's Fund Ins. Co., 14 Haw. 21 (1902), the Court held that an agent's conduct could not prevent the insurer from asserting a specific limitation which was clear and unambiguous on the time within which a proof of loss had to be filed.

■ An insurance company may limit its liability and courts will not permit assureds to create ambiguities where none exist in order to avoid the limitation. Courts will also recognize integration clauses like the ones in defendant's policy and in the Hawaiian statute which provide that "[n]o agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy," and that "[n]o insurer or its representatives shall make any insurance contract or agreement relative thereto other than as is plainly expressed in the policy." Revised Laws of Hawaii, Ch. 181, § 181–425(a), (b).

■ Here Vernon L. Parker, the insurance company's salaried branch

5. Plaintiffs also contend that defendant is estopped to deny coverage because it breached a promise contained in Mr. Clay's letter to Mrs. Brown to defend that action brought by Miss Chapman. The Court of Appeals rejected this contention in First Ins. Co. of Hawaii v. Chapman, supra. I have held that plaintiffs are not in privity with any party to that action, and that they are therefore not barred from relitigating this issue. However, I agree with the Court of Appeals that, assuming the promise to defend was made, its breach would not be a basis for estopping the company from denying coverage under the policy. As the Court of Appeals stated, "This was not a case where the insured, in reliance upon representations of coverage, had refrained from securing coverage of the risk elsewhere. [Citations omitted.] Here the only change of position resulted from the representation that the company would defend suit. * * * "

manager, interpreted the provision in a manner contrary to the interpretation of the company which seeks to avoid liability. The branch manager represented to the assureds that the policy meant what he thought it did; the assureds were unaware of the company's interpretation and in good faith relied on the representations of the branch manager when they purchased the insurance. Under these circumstances, the company is estopped from denying the branch manager's interpretation. The only possible exception would be the delivery of the policy with a limitation provision written in clear, simple and unambiguous language.

Purchasers of insurance should not be required to rely at their peril on the representations of a branch manager particularly when the limitation runs counter to the purchasers' reasonable expectations. In my view it is unreasonable to expect that the operators of a retail store would realize that to protect themselves against injuries resulting from the use of sold merchandise they must keep the policy in effect long after they have either sold or otherwise disposed of the business.

Here Helen Chase sold her interest in the partnership to Jennie Fink, her niece. Later, Edith Brown also sold and transferred her interest to Jennie Fink. After each transfer, the names of the assureds were changed to reflect the changes in ownership. If either Mrs. Brown or Mr. Parker were aware of the company's interpretation of the policy, both Mrs. Chase and Mrs. Brown could have been protected by simply adding their names to the policy as one of the assureds, along with Jennie Fink, the partner and later the new owner. This could have been done without any additional premium because premiums were based upon the size of the store and volume of business, and not on the number of assureds.

I do not believe that either Mrs. Chase or Mrs. Brown would have understood the meaning and possible bizarre results of the limitation provision even if they had read the policy. After Mr. Parker's statements about the extent of the coverage, I am confident they would not have interpreted the limitation provision in the same manner as the company did. Long and complicated printed insurance policies should not be permitted to do violence to the reasonable expectations of those who are unable to understand the meaning of those clauses which the insurer's own managers cannot understand.

There is no merit in defendant's contention that the parol evidence rule requires the exclusion of Parker's testimony that the policy covered all goods sold. Hawaii follows the rule that the parol evidence rule does not exclude evidence of contemporaneous oral agreements to explain an ambiguity in the contract. Bishop Estate Trustees v. Castle & Cooke, Inc., 45 Haw. 409, 368 P.2d 887 (1962).

Defendant contends that the statute of limitations bars plaintiffs' claim. Since both Oregon and Hawaii have six-year statutes of limitations for contract actions, ORS 12.080(1); Revised Laws of Hawaii, Ch. 241, § 241-1 (a) (1965 Supp.), the Oregon "borrowing" statute, ORS 12.260, is inapplicable. The issue is therefore governed by Oregon law.

This action was filed on April 20, 1967. Defendant asserts that the statute of limitations began to run no later than September 1, 1959, because by that time it had denied that the policy covered the loss. Plaintiffs argue that the statute did not begin to run until Miss Chapman's judgment against them became final. The Court of Appeals affirmed that judgment in May, 1962. Brown v. Chapman, supra.

While it is true that the company denied coverage before September, 1959, the policy provides that "[n]o action shall lie against the company * * * until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written

agreement of the insured, the claimant and the company." Plaintiffs might have been able to bring a declaratory judgment action after September, 1959, but there was no breach of the insurance contract until May of 1962.

Oregon law also supports plaintiffs' position. In Duniway v. Wiley, 85 Or. 86, 166 P. 45 (1917), an attorney sued on a contract under which he was employed to contest assessments levied by the City. The Court held that the statute of limitations did not begin to run until the time had expired for the City to make a reassessment, because until then there could be no final adjudication of the assessment action.

 Plaintiffs also allege that defendant's conduct was tortious, and they seek damages for emotional distress. In tort actions Oregon courts will apply the law of the state with the most significant relationship to the occurrence and parties. Casey v. Manson Const. and Engineering Co., 428 P.2d 898 (Or.1967). The only states with a relationship to the occurrence and parties are Washington and Hawaii. Both states grant damages for emotional distress only if the defendant's conduct is malicious or in reckless disregard of plaintiff's rights, Anderson v. Knox, 297 F.2d 702, 730 (9th Cir. 1961); Murphy v. City of Tacoma, 60 Wash.2d 603, 374 P.2d 976 (1962). It is therefore unnecessary to decide which state an Oregon court would find has the most significant relationship.

Under this standard governing damages for emotional distress, plaintiffs cannot recover. Plaintiffs claim that defendant knew there was no coverage in March, 1959, and failed to notify them for four months. The evidence on the time the insurer became aware of noncoverage is confusing. Plaintiffs contend that Miss Chapman's attorney told defendant of the date of the accident in March, 1959. However, other evidence including written memoranda show that in March, Miss Chapman's attorney still was not sure of the date of the accident.

Moreover, Mrs. Brown's letter to defendant notifying it of the accident stated that the date of purchase of the skirt was February, 1956, and that the accident was "a year or so later." This could have meant that the accident occurred while the policy was in effect. In view of this confusing evidence, I cannot find that defendant knew of the noncoverage in March, and therefore I find that it did not act maliciously or in reckless disregard of the insureds' rights.